### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

DENNIS THOMPSON,
#B67474,

              Plaintiff,

v.

REVA ENGELAGE,
C/O BAKER,
ANGELA CRAIN, and
ANTHONY WILLIS,

              Defendants.

Case No. 22-cv-02243-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Dennis Thompson, an inmate of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for constitutional deprivations that occurred at Menard Correctional Center. The Complaint is now before the Court for review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims. See 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, meritless, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Page 1 of 12

## THE COMPLAINT[1]

Plaintiff alleges that he suffers from degenerative joint disease in both hips, shoulders, and his spine. (Doc. 1, p. 7). He also is obese and has arthritis, a shoulder tear, and spinal disc bulges and herniations. Because of his various conditions, Plaintiff suffers from severe pain. He has been sent to outside facilities for treatment and three times a day takes ibuprofen, methocarbamol, Neurontin, and Tramadol. (*Id.* at p. 8). Plaintiff has difficulty standing and walking. In the cell house, he uses crutches to walk and uses a wheelchair for "out of cell house" movement. (*Id.* at p. 26).

Plaintiff asserts that for the last four years he has been subjected to ongoing harassment by Nurse Reva Engelage. (Doc. 1, p. 20). He states that in late 2018 and throughout 2019, Engelage harassed him for the few times he walked short distances without the assistance of a walking device. (*Id.* at p. 23, 33). Plaintiff explains that there were occasions in which he did not use a walker or crutches because his walker was broken at the time or because he was doing the correctional officer on duty a favor by not having the officer go and retrieve his walking device. Engelage would record the incidents in which he was observed walking without the assistance of a device in the medical records and make comments to Plaintiff, such as "oh it's a miracle" and "he shouldn't have crutches in the first place, he doesn't even need them." (*Id.* at p. 19, 22). Plaintiff states that she "threw fits each time she stopped at [his] cell and learned [he] wasn't walking up any stairs." (*Id.* at p. 24). At some point, Engelage told Plaintiff that he had forfeited his medical permits limiting his movements because she had witnessed him walking. But as a

---

[1] In the Complaint, Plaintiff references other lawsuits he is currently prosecuting or has litigated in the past, along with various medical treatment he has received and failed to receive that is not at issue in this case. He also extensively quotes exhibits and medical records. Plaintiff states that he provides this additional information in order to give the Court background on his claims. Unfortunately, the result is that these additional details make his Complaint and the claims he wishes to pursue in *this case* difficult to follow. The Court will only summarize the alleged facts that appear to be directly relevant to claims against Defendants named in this lawsuit.

licensed professional nurse, Engelage did not have the authority to issue or revoke medical permits. (*Id.*).

During one of their interactions, Plaintiff was told by Engelage that he would be switching from Tramadol to Tylenol 3 because the pharmacy was no longer carrying Tramadol. (Doc. 1, p. 43). In May of 2020, Plaintiff had an appointment with Engelage requesting to be switched back to Tramadol. Tylenol 3 caused Plaintiff severe constipation, which resulted in swollen anal tissue and aggravated his hemorrhoids.[2] Engelage told Plaintiff there was nothing she could do. Later, another inmate told Plaintiff that he had been on Tramadol the entire time Engelage had told Plaintiff that the medicine was no longer available. When Plaintiff asked Engelage about whether Tramadol was available, she stated that the pharmacy always carried the medicine but there was a shortage. She stated she was told to review her case load and recommend who should be switched to Tylenol 3. (*Id.* at p. 43). Plaintiff asserts that while nurses cannot prescribe medication, because the prison is understaffed, the "practitioners" heavily rely on nurses to give background information in the referral orders and oral reporting. Plaintiff told Engelage that he had repeatedly told her that Tylenol 3 aggravated his hemorrhoids. Engelage responded, "yeah and I gave you cream, however, since you are bitchin' and complaining as you always do I'll refer you to see Dr. Siddqui." (*Id.*). Plaintiff then showed Engelage a court case stating that nurses have an independent duty to ensure that inmates receive constitutionally adequate care and another court case where the court held that prescribing Tylenol 3, which causes constipation, to a prisoner who had previously had rectal prolapse surgery could worsen the prisoner's condition. (*Id.* at p. 43-44). Engelage took the materials, and Plaintiff saw the doctor a few days later.

At the appointment, the doctor told Plaintiff that if he had known Plaintiff's medical history

---

[2] In 2012, Plaintiff had surgery to repair a ruptured hemorrhoid and rectal abscess. (Doc. 1, p. 42).

then Plaintiff would have never been switched to Tylenol 3. (Doc. 1, p. 44). The doctor also stated that there are ways of still obtaining medications even if there are shortages. The doctor immediately resumed Plaintiff's Tramadol prescription. Plaintiff alleges that due to understaffing, the doctors rely heavily on the background information given to them by the nurses. (*Id.*).

On December 17, 2021, Correctional Officer Baker stopped at Plaintiff's cell and told Plaintiff that Plaintiff had a doctor's appointment around 8:00 a.m. and to be ready. (Doc. 1, p. 8). Baker left and upon his return, Baker repeatedly walked up and down the gallery but did not retrieve Plaintiff for his appointment. Plaintiff asked Baker if he was going to take Plaintiff to the health care unit several times. Baker told Plaintiff, "Quit your bitchin' I'm going to take you to the HCU when I feel like it they are over their[sic] all day." Plaintiff again asked Baker to take him to his appointment around 12:30 p.m. Baker told Plaintiff he would take Plaintiff after he signed the "rounds made logbook." Baker did not return to the gallery until 1:45 p.m. Plaintiff stopped Baker again and asked about the medical appointment. While smiling, Baker told Plaintiff that his appointment had been canceled. Plaintiff told Baker that he knew Baker was lying and that Baker was too lazy to take him to the health care unit. Baker told Plaintiff that it was true, he gets lazy when it comes to "whinney[sic] bitches like you who continually file lawsuits, then brag about it every time I walk pass your cell." (*Id.* at p. 9).

After Baker refused to take Plaintiff to his medical appointment, Plaintiff submitted a "sick call" request. (Doc. 1, p. 10). He was experiencing withdrawals from not having Tramadol and was in severe pain. He was seen at sick call on December 26, 2021, by Nurse Engelage. Plaintiff explained that Baker did not take him to the health care unit on December 17 and that he was having severe pain. He further stated that his prescriptions were expired, and he was experiencing withdrawals from not having Tramadol. Engelage told Plaintiff that she had already referred Plaintiff to see the medical doctor and all she could do was to refer him again. Plaintiff asked

Engelage to call the health care unit and explain his situation since it could take up to three weeks to reschedule him to be seen by a practitioner. If he could not be scheduled to see a doctor soon, he requested that prescriptions be submitted for renewal via a "jacket review." Plaintiff explains that a having a prescription renewed by "jacket review" occurs when the medical practitioner renews medication without a prisoner being present." (*Id.* at p. 11). Plaintiff told Engelage that he knows she has the authority to take him immediately to the health care unit or submit his name to the health care unit as a "priority" based on his previous experiences. Engelage became upset. She stated that his prescriptions could not be "jacket reviewed," and that all she could do was refer him to the medical doctor "in the normal manner." Engelage was being dishonest and misrepresented the interaction in the medical recorded. (*Id.* at p. 13, 20, 27). She falsely recorded that Plaintiff was not taken to his appointment on December 17 due to an emergency. (*Id.* at p. 20, 27). She also did not refer him to the medical doctor as she stated. (*Id.* at p. 10, 28). Plaintiff asserts that Engelage "loathes" him and took advantage of the situation to make him suffer. (*Id.* at p. 17).

The following day, a correctional officer noticed Plaintiff was struggling to dress himself. (Doc. 1, p. 24). The officer stopped and asked Plaintiff if he was still suffering from pain after yesterday's sick call appointment with Engelage. Plaintiff said yes, and the officer went and found a lieutenant. The officers asked for Plaintiff's medical records, and after reviewing them, Plaintiff was escorted immediately to the health care unit first aid. On the way, the correctional officer told the lieutenant that Engelage "should have took[sic] care of this yesterday but their[sic] fucking with him because of some medical law suits." (*Id.*). The lieutenant stated that Baker should have "just taken him for his [appointment]." (*Id.* at p. 25).

At the health care unit, Nurse Kirk asked Plaintiff that if he was not taken to his appointment why Engelage did not have his prescriptions "jacket review renewed." (Doc. 1, p. 25). Plaintiff told Kirk that Engelage said renewal via a jacket review could not be done. Kirk said

Page 5 of 12

that she did not believe Engelage would have said that and told Plaintiff to change his story. The correctional officer indicated that Plaintiff was telling the truth and so Kirk went and retrieved Plaintiff's chart.

Kirk and the correctional officer then stepped into the hall to talk, but Plaintiff was able to overhear what they were saying. The correctional officer explained that he had taken Plaintiff to sick call the day before to see Engelage. He stated that paperwork "seemed to annoy" Engelage. The nurse responded that Engelage was not doing her job properly, as Plaintiff's prescriptions were expired, he was clearly in a lot of pain, and withdrawal from Tramadol could cause seizures, irregular heartbeat, or a stroke. (*Id.* at p. 26). The nurse went and spoke with a practitioner who instructed the nurse to administer a Toradol injection shot. (*Id.* at p. 27). Kirk also instructed that Plaintiff refrain from movement and that he be fed in his cells for one month. (*Id.* at p. 28). She referred Plaintiff to the medical doctor but in the meantime also requested a jacket review of his prescriptions. That same day, Dr. Coppel renewed Plaintiff's prescriptions until an in-person evaluation could be performed. (*Id.* at p. 28). Dr. Coppel further recorded that there was no record that Plaintiff refused to attend his appointment on December 17.

### PRELIMINARY DISMISSALS

Plaintiff names Warden Willis as a defendant, but there are no discernable claims against him in the Complaint. Accordingly, all claims against Willis are dismissed. *See* FED. R. CIV. P. 8.

Plaintiff also asks the Court to allow him to proceed on an Eighth Amendment claim against Engelage for ongoing harassment. (Doc. 1, p. 20). The Court does not find that Engelage's unprofessional and rude comments, as asserted in the Complaint, amount to the level of extreme harassment that is required to violate the Eighth Amendment violation. *See Dobbey v. Ill. Dep't of Corr.*, 574 F. 3d 443, 446 (7th Cir. 2009) ("harassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment"). Because Plaintiff cannot proceed with

a harassment claim, his allegations against Crain for "allowing" Engelage to harass him also fails

and is dismissed. (*Id.* at p. 33).

## DISCUSSION

Based on the allegations in the Complaint and Plaintiff's articulation of his claims, the

Court designates the following claim in this pro se action:

| | |
|---|---|
| **Count 1:** | First Amendment claim against Baker for failing to take Plaintiff to his medical appointment on December 17, 2021, in retaliation for filing lawsuits. |
| **Count 2:** | First Amendment claim against Engelage and Crain for retaliating against Plaintiff for filing lawsuits. |
| **Count 3:** | Eighth Amendment claim against Engelage and Crain for providing inadequate medical care on December 26, 2021. |
| **Count 4:** | Eighth Amendment claim against Engelage and Crain for failing to intervene when Plaintiff was not receiving proper medical treatment. |
| **Count 5:** | Claim against Crain and Engelage for retaliating against Plaintiff for having serious medical conditions and disabilities. |
| **Count 6:** | Eighth Amendment claim against Engelage for recommending that Plaintiff be switched from Tramadol to Tylenol 3. |

The parties and the Court will use these designations in all future pleadings and orders, unless

otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the**

**Complaint but not addressed in this Order should be considered dismissed without prejudice**

**as inadequately pled under the *Twombly*[3] pleading standard.**

## Counts 1 and 2

Plaintiff has sufficiently stated a retaliation claim against Baker for retaliating against him

by refusing to take him to his medical appointment on December 17.

---

[3] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Count 2 will proceed against Engelage and Crain for providing Plaintiff inadequate treatment, recording false information in Plaintiff's medical record, and spreading false information about him among the staff because he filed lawsuits and complained about his conditions of confinement. (Doc. 1, p. 34, 36, 37-40).

## Count 3

Count 3 will also proceed against Engelage for failing to provide Plaintiff adequate care during his December 26, 2021, appointment.

Count 3, however, is dismissed as to Angela Crain, the medical administrator. Plaintiff claims that he is asserting an Eighth Amendment claim against Crain for refusing to submit an "urgent or even a normal referral for Plaintiff to see a doctor for his opioid withdrawal, shoulder tear, disc bulges, herniations, and severe DJD in shoulders, hip, and spine." (Doc. 1, p. 9). The Complaint does not provide any facts that Crain was aware and had a reasonable opportunity to intervene in the denial of care that occurred on December 26, 2021. Plaintiff states he wrote numerous grievances "trying to get Angela Crain to intervene," but the day following his appointment with Engelage, he was seen by Nurse Kirk on December 27, who expedited his care. (Doc. 1, p. 30).[4]

## Count 4

Likewise, Count 4 is dismissed. Plaintiff claims that he explained to Engelage and Crain that Baker had intentionally refused to take Plaintiff to his appointment on December 17, 2021. (Doc. 1, p. 31). However, Crain denied his grievance against Engelage for not reporting the incident to prison administrative officials. He states inmates rely on the grievance system and by

---

[4] Plaintiff also references a time that Crain denied a grievance after Plaintiff was seen by Nurse Practitioner Mouldenhauer for blood pressure medication. (Doc. 1, p. 30). This allegation appears to be more background information and does not directly relate to Plaintiff's allegation against Crain for failing to intervene in his treatment on December 26, 2021.

denying his grievance, Crain breached her administrative duty. (*Id.* at p. 32). Engelage and Crain, however, have no constitutional duty to take corrective action once the violation has occurred. *Soderbeck v. Burnett Cnty,* 752 F.2d 285, 293 (7th Cir.), *cert. denied*, 471 U.S. 1117 (1985). Furthermore, Plaintiff does not have a liberty interest in the grievance process as he asserts. (Doc. 1, p. 31). *See Owens v. Hinsley,* 635 F.3d 950, 953-54 (7th Cir. 2011). Thus, Count 4 is dismissed to the extent Plaintiff is claiming Crain and Engelage failed to report or take corrective action after Baker refused to take him to his appointment on December 17.

Plaintiff also asserts that he reported to Engelage on "numerous occasions" about a non-party, Nurse Practitioner Zimmer, refusing to see him. (Doc. 1, p. 35; Doc. 1-1, p. 68-60). Plaintiff claims Zimmer would not treat him because he allegedly made derogatory remarks to her. (*Id.*). Plaintiff states he grieved Zimmer's conduct for over a year, and Engelage and Crain were turning a blind eye. (Doc. 1, p. 36). He states that he believes that Engelage and Crain were in "cahoots" with Zimmer. These allegations do not state a claim for deliberate indifference on the part of Engelage or Crain for failing to intervene in Zimmer's alleged misconduct. It appears that on the occasions when Zimmer refused to see him, Plaintiff was always rescheduled to be treated by another provider. Thus, Plaintiff is not claiming that he was denied care but that he was unhappy with Zimmer's conduct towards him and claims that she "can't cherry pick the inmates she will and wont treat." (Doc. 1, p. 35; Doc. 1-1, p. 68-60). Plaintiff does not have a right to demand specific care, including to be seen by a specific medical professional, and he does not explain how Zimmer rescheduling him with a different provider resulted in a serious risk to his health. Accordingly, Count 4 is dismissed against Crain and Engelage for failing to intervene when Zimmer would reschedule Plaintiff to be treated by another provider.

### Count 5

Plaintiff asserts that Crain and Engelage retaliated against him for "having serious medical

Page 9 of 12

conditions and/or disabilities." (Doc. 1, p. 35). The Court construes this claim as a brought under

the Fourteenth Amendment for discrimination.[5] The Fourteenth Amendment's Equal Protection

Clause prohibits a state official from singling out a person for discriminatory treatment for no

rational reason. To state a "class-of-one" equal protection claim, an individual must allege that he

was "intentionally treated differently from others similarly situated and that there is no rational

basis for the difference in treatment." *Swanson v. City of Chetek*, 719 F.3d 780, 783-84 (7th Cir.

2013) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiff alleges that Engelage provided him inadequate medical care because she does not

like him. (Doc. 1, p. 17). As an example, he cites to an instance where Engelage submitted inmate

Kirk Cochran to be seen by a doctor as a "priority" when Cochran did not have a severe injury

because he was not always complaining and bothering her. (*Id.* 17-18). At this point, Plaintiff has

sufficiently alleged the Engelage treated Plaintiff differently from other inmates for no rational

medical reason. However, Plaintiff has not sufficiently pled that he has been intentionally treated

differently from other inmates by Crain. Count 5 will proceed against Engelage and is dismissed

as to Crain.

### Count 6

Count 6 will proceed against Engelage for recommending that Plaintiff be switched from

Tramadol to Tylenol 3 for non-medical reasons and despite knowing that the switch would cause

further issues with his hemorrhoids. (Doc. 1, p, 42-44).

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to

Section 1915A. **COUNT 1** will proceed against Baker. **COUNT 2** will proceed against Engelage

---

[5] The First Amendment prohibits retaliation for engaging in speech protected by the First Amendment. *See Bridges v. Gilbert,* 557 F. 3d 541, 546 (7th Cir. 2009).

and Crain. **COUNT 3** will proceed against Engelage but is **DISMISSED without prejudice** as to Crain. **COUNT 4** is **DISMISSED without prejudice**. **COUNT 5** will proceed against Engelage but is **DISMISSED without prejudice** as to Crain. **COUNT 6** will proceed against Engelage. All claims against Willis in his individual capacity are **DISMISSED without prejudice.** Willis will remain a party in his official capacity, however, for the purpose of implementing any injunctive relief that may be ordered.

Because Plaintiff's claims involve his medical care, the Clerk is further **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Baker, Engelage, Crain, and Willis (official capacity only) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendants' place of employment. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant**

Page 11 of 12

**to Administrative Order No. 244, Defendants should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   August 3, 2023**

*s/ Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**